UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| | : | 3:09-CR-00136 (JCH) |
| v. | : | |
| ANDREW ZAYAC | : | NOVEMBER 1, 2011 |

**RULING RE: DEFENDANT'S MOTION FOR NEW TRIAL AND MOTION FOR ACQUITTAL (Doc. No. 274)**

**I.    INTRODUCTION**

On July 22, 2011, a jury found defendant, Andrew Zayac, guilty of nine counts of a Second Superseding Indictment.  The jury returned a verdict of guilty with regard to Count One, in violation of 18 U.S.C. §§ 1201(a)(1) and 2; Count Three, in violation of 18 U.S.C. §§ 924(c), 924(j)(1) and 2; Count Four, in violation of 18 U.S.C. §§ 1951(a) and 2; Count Five, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and 18 U.S.C. § 2; Count Seven, in violation of 18 U.S.C. § 924(o); Count Eight, in violation of 18 U.S.C. §§ 1519 and 2; Count Nine, in violation of 18 U.S.C. §§ 1519 and 2; Count Ten, in violation of 18 U.S.C. §§ 1519 and 2; and Count Eleven, in violation of 18 U.S.C. § 1519.  The jury returned a verdict of not guilty with regard to Count Two.  The jury did not return a verdict as to Count Six, pursuant to the court's instruction that the jury should not deliberate on Count Six if a guilty verdict was returned as to Count Two or Count Three.

Defendant now moves the court for a new trial and for a Judgment of Acquittal. For the reasons set forth below, the court denies each motion.

1

## II. FACTS

A Second Superseding Indictment charged defendants Andrew Zayac and Heriberto Gonzalez with Kidnapping Resulting in Death, Causing Death Through the Use of a Firearm – Premeditated Murder, Causing Death Through the Use of a Firearm – Felony Murder, Interference with Commerce by Robbery, Use of a Firearm During and In Relation to a Narcotics Trafficking Offense, Possession with Intent to Distribute Marijuana, Conspiracy to Use or Possess a Firearm in Furtherance of Crimes of Violence and a Narcotics Trafficking Offense, three counts of Destruction or Concealment of Evidence in Federal Investigation, and Conspiracy to Destroy/Conceal Evidence in a Federal Investigation.

At trial, the government presented evidence to support the following facts. Zayac arranged a transaction with the victim, Edward Rivera, whereby Zayac would take delivery of approximately 70 pounds of marijuana. Zayac communicated with Rivera through several cell phones, including the "3500 phone," which was only used to contact Rivera. The 3500 phone was last used the night Rivera disappeared, and was never located. On February 8, 2009, Zayac drove a blue Jeep Grand Cherokee to pick up Rivera from his apartment in the Bronx at approximately 11:42pm. Rivera transported the marijuana in two duffle bags, which were loaded into Zayac's Jeep. One witness testified that he saw silhouettes or shadows of people in both the driver and passenger side of the vehicle when Rivera got into the car. Rivera was shot twice, and died, in the backseat of Zayac's Jeep. Zayac, with Gonzalez as a passenger, then drove the Jeep to the Padanaram Reservoir in Danbury, CT. Rivera's body was removed from the

backseat of the Jeep and concealed at the bottom of a steep hill behind several rocks and trees.

Zayac and Gonzalez then drove to the New Rochelle residence of Zayac's girlfriend, Stephanie DiBuono, where Zayac removed the marijuana and stored it in DiBuono's Cadillac. Zayac and Gonzalez then drove to Gonzalez's apartment in the Bronx and picked up Gonzalez's Mercedes-Benz. Gonzalez and Zayac drove to a gas station to purchase gasoline, and set Zayac's Jeep on fire, torching all evidence in the Jeep and burning both defendants. Gonzalez then drove himself and Zayac back to his apartment to change clothes and treat their burns. Later, Gonzalez drove Zayac back to DiBuono's residence in New Rochelle. In the following days, Zayac instructed DiBuono to report the Jeep stolen and file a false insurance claim. In addition, in the days after the murder, Gonzalez brought Zayac several personal items that were removed from the Jeep before it was burned.

Sometime later, Zayac transferred the marijuana to his parents' home in Scarsdale, NY, where it was later discovered by the authorities. After his arrest, Zayac made several inconsistent statements to police and law enforcement regarding his knowledge and involvement with these events.

### III. STANDARD

#### A. Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure provide that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). The Rule confers broad discretion upon a trial court to "set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." See

3

United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). In exercising its discretion, however, the court must be careful not to wholly usurp the role of the jury, and should defer to the jury's assessment of witnesses and resolution of conflicting evidence unless "exceptional circumstances can be demonstrated." Id. at 1414.

Ultimately, the court must decide "whether letting a guilty verdict stand would be a manifest injustice." See United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). The court should "examine the entire case, take into account all facts and circumstances, and make an objective evaluation." Id. After doing so, "[t]here must be a real concern that an innocent person may have been convicted" in order to grant the motion. Sanchez, 969 F.2d at 1414. The court's Rule 33 authority should be used "sparingly" and only "in 'the most extraordinary circumstances.'" Ferguson, 246 F.3d at 134.

B.  Motion for Judgment of Acquittal

"A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial 'bears a heavy burden.'" United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008). In deciding such a motion, the court must view the evidence in the light most favorable to the government, draw all inferences in favor of the government, and defer to the jury's assessment of the witnesses' credibility. See id. The jury's verdict should stand "so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original) (internal citations omitted). It is not the trial court's role to "'substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of

4

the jury.'" United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (quoting Curley v. United States, 160 F.2d 229, 232 (D.C. Cir. 1947)).

## IV. DISCUSSION

### A. New Trial

Zayac points to three reasons the court should grant a new trial. First, Zayac claims that the court improperly excluded evidence that police recovered an empty holster and magazine from Gonzalez's residence on March 3, 2009. Second, Zayac claims that the court should have granted a mistrial based on the government's "objectionable presentation" of a particular exhibit. Finally, Zayac claims that the court erred in failing to include a duress charge in the jury instructions with regard to Counts One and Four.

#### 1. Empty Holster

Zayac argues that the court erred in excluding from evidence an empty holster custom-made to fit a .380 handgun and an empty magazine cartridge for a .380 semiautomatic that law enforcement found at Gonzalez's apartment three weeks after the murder. See Def.'s Mem. in Support at 4.[1] Zayac sought to admit the holster and magazine as relevant evidence to the defense theory that Gonzalez had access to a potential murder weapon, and as corroboration to Zayac's statement that Gonzalez took a small 9mm gun from a backpack and shot Rivera. See id.

In excluding the evidence, the court determined that, although the holster was relevant, it was not very probative to the case, given the number of inferences the jury would be required to make in order to connect the empty holster, which was discovered three weeks after the murder, to Gonzalez's possession and use of a firearm during

---

[1] The holster was specially made and had space to hold the cartridge. Transcript at 532.

5

Rivera's murder.  The court then conducted a balancing test under Federal Rule of Evidence 403, and determined that there was a strong likelihood that admitting the holster would lead the jury to draw speculative inferences regarding the firearm used in Rivera's murder and create confusion of the issues.

Dr. Wayne Carver, Chief Medical Examiner, testified that a number of firearms could have caused injuries consistent with those found in Rivera's body, including a 9mm, .380 caliber, .40 caliber, 10 mm, and .45 caliber.  Dr. Carver was unable to say with any certainty which of these firearms was used to kill Rivera.  The holster and magazine that the defendant sought to introduce, however, corresponded with just one of these possibilities.  Given the range of firearms that could have been used in Rivera's murder, excluding the empty holster and magazine from evidence did not result in manifest injustice.

In addition, as the government points out, even if a jury had found that the holster implied that Gonzalez had possessed a firearm that could have been the firearm used to kill Rivera, such evidence would serve to corroborate the government's theory that Gonzalez and Zayac perpetrated the crimes together.  See Mem. Opp. Def.'s Motions at 10.  For the purposes of Zayac's criminal liability, so long as the evidence proved that he had aided and abetted Gonzalez in the commission of the crimes, it would not have mattered if Gonzalez had in fact possessed the weapon used to kill Rivera.   Given the other evidence in the record to support the conclusion that Zayac was a willing participant in Rivera's kidnapping, robbery, and murder, the jury could have convicted Zayac on a theory of aiding and abetting.  Consequently, a new trial is not warranted.

### 2. Government's Exhibit 90

Next, Zayac argues that the court should have granted a mistrial after the government introduced Exhibit 90, which displayed the words "Recorded prison call: Zayac admits to being driver for drug transaction." See Def.'s Mem in Support at 8. The government introduced Exhibit 90 as a summary exhibit during its direct examination of Agent Rodney George.

At trial, the government announced its intention to publish Exhibit 90 to the jury, and defense counsel responded "No objection." See Transcript at 951. After four questions, defense attorneys requested a sidebar, and at sidebar, objected to the reference to the recorded phone call because the government did not plan to admit the entire phone call. See Transcript at 953. The court directed the government to cover the reference to the phone call and Zayac's admission, which the government did prior to resuming its examination of Agent George. See Transcript at 954.

Zayac claims that prosecutorial misconduct occurred here, in that the exhibit was left on the jury's monitors during the beginning of the discussion at sidebar, and the government admitted evidence of a prison call to which it had previously objected. See Def.'s Mem. in Support at 9–10. It is clear that there was no prosecutorial misconduct in publishing Exhibit 90 to the jury, where the defense affirmatively stated that there was no objection to the exhibit before it was published, and then did not object to the exhibit until the sidebar began. After the objection was made at sidebar, the court immediately removed Exhibit 90 from the jurors' screens. The court later concluded that, although it is possible that some jurors noticed the statement, the exhibit was fairly "busy," and it is

7

unclear whether any jurors focused on that part of the exhibit during the short time it was published to the jury.  See Transcript at 1054.

In addition, the government was entitled to object to the defense's attempt to admit the contents of the prison call through its cross-examination of Stephanie DiBuono, as any statements made by Zayac to DiBuono are hearsay when offered by the defense.  It is entirely consistent with the Federal Rules of Evidence for the government to object to the defendant's attempt to admit such statements, while planning to admit statements made by Zayac to DiBuono under a hearsay exception, namely Rule 801(d)(2).  Such a strategy is not prosecutorial misconduct.

Although the government erred in failing to redact the portion of Exhibit 90 that referenced a recorded prison phone call and admission by the defendant when it did not intend to introduce the actual phone call, such an error does not warrant a new trial. Prior to the introduction of Exhibit 90, there was already evidence in the record that Zayac admitted to driving the Jeep for the planned drug deal.  Additionally, there was evidence that Zayac was in custody beginning in early March 2009.  See Transcript at 1057–58.  Given this similar evidence was already in the record, any prejudice to Zayac that resulted from the brief introduction of the unredacted version of Exhibit 90 is not a miscarriage of justice and does not warrant a new trial.

      3.      Duress Instruction

Finally, Zayac argues that the court erred in failing to instruct the jury regarding duress, in spite of Zayac's contention that any participation on his part in the kidnapping/murder or robbery of Edward Rivera was done under duress by Gonzalez. A defendant is only entitled to a jury instruction on the affirmative defense of duress if

8

the defense has "'a foundation in the evidence.'" See United States v. Gonzalez, 407 F.3d 118, 122 (2d Cir. 2005) (quoting United States v. Podlog, 35 F.3d 699, 704 (2d Cir. 1994)). To establish a defense of duress, there must be evidence to support "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity." Id.

Under Zayac's version of the events, he waited in the Jeep alone while Gonzalez concealed Rivera's body at the bottom of a steep hill. Even taking these facts as true, a reasonable juror could not find that Zayac lacked a reasonable opportunity to escape while he waited alone in the Jeep for Gonzalez, at a time when both the kidnapping and robbery crimes were ongoing. See, e.g., United States v. Seals, 130 F.3d 451, 462 (D.C. Cir. 1997) ("[T]he crime of kidnapping continues while the victim remains held."); United States v. Grubczak, 793 F.3d 458, 464 (2d Cir. 1986) (holding that a robbery continues throughout the "escape phase"). Consequently, the court's failure to instruct the jury regarding duress was not a miscarriage of justice, and does not warrant a new trial.

B.  Judgment of Acquittal

Zayac contends that the only evidence offered in support of Count One were Zayac's own statements, which the government's case relied on the jury disbelieving, and instead "made its case . . . through murder and robbery charges." See Def.'s Mem. in Support at 15. In addition, Zayac argues that the government failed to present

evidence that Zayac possessed a firearm, either directly or constructively, and that the government offered no evidence of mens rea.

Viewing the evidence in the light most favorable to the government, it is clear that a jury could reasonably conclude that Zayac fully participated, or at least aided and abetted, in Rivera's kidnapping, robbery, and murder. Similarly, sufficient evidence existed for the jury to reasonably conclude that Zayac concealed or destroyed, or aided and abetted the concealment or destruction, of evidence. Consequently, the court will not usurp the jury's role and question their assessment of the evidence.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion for a New Trial and Motion for Judgment of Acquittal (Doc. No. 274) are denied.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of November, 2011.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge